OPINION
{¶ 1} This timely appeal comes for consideration upon the record in the trial court, the parties' briefs, and their oral arguments before this court. Plaintiffs-Appellants, Terry and Deborah Thomas, appeal the decision of the Carroll County Court of Common Pleas that granted judgment to Defendant-Appellee, Ohio Power Company dba American Electric Power, on the Thomases claim for rescission of a contract between themselves and Ohio Edison which granted Ohio Edison an easement on the Thomases' property. The Thomases argue that the parties were mutually mistaken about a material fact when they entered into the contract and, therefore, that the contract should be rescinded. Ohio Edison disagrees and claims that the Thomases failed to plead mutual mistake in their complaint.
 {¶ 2} A review of the complaint indicates that the Thomases pled the facts necessary to state a claim for mutual mistake. Furthermore, the evidence shows that there was a mutual mistake in this case. The purpose of the easement was to provide electric power to the Thomases' neighbor. Both the Thomases and Ohio Power believed Ohio Power could provide electric power to that neighbor, but they were both mistaken about that fact. Ohio Power was in a better position to know that this belief was mistaken than the Thomases, thus the trial court should have rescinded the contract at the Thomases' request.
 {¶ 3} Accordingly, the trial court's decision is reversed and this case is remanded for a calculation of the Thomases' damages.
 Facts {¶ 4} The parties in this case stipulated to the facts in the trial court. Those stipulations provided as follows:
 {¶ 5} "1 Plaintiffs are the owners of property in Augusta Township, Carroll County, Ohio. This property is more fully described on the deed, Exhibit 1 hereto, and consists of 159 acres, rectangular in shape, located as shown on the cross-hatched portion of the plat, Exhibit 2 hereto. The northwest corner of the Thomas property is traversed by Meter Road on a diagonal, which is also marked as a thick black line on the plat, Exhibit 2. *Page 2 
 {¶ 6} "2. Property immediately to the east of the Thomas property described above is owned by Brent Baker. Baker's property is outlined in blue pen on the plat thus: / / / / /. Until 2005 there was no dwelling located upon the Baker property.
 {¶ 7} "3. The Thomas property is within the geographical area served by Ohio Power Company, dba American Electric Power (hereinafter referred to as `Ohio Power'). The Baker property is in the service area of Carroll Rural Electric Power (Carroll REA). Neither of those two companies may provide power to the geographical area assigned to the other, without the consent of both companies and the affected customer. The areas served by Ohio Power and Carroll REA are marked in Exhibit 2.
 {¶ 8} "4. During 2005, Brent Baker approached Plaintiff Terry Thomas requesting permission for Ohio Power to take an easement across the Thomas property for the purpose of bringing power lines down to the Meter Road diagonal traversing the Thomas property for the purpose of supplying power to a dwelling house that Baker then contemplated building upon his property. The Thomases consented.
 {¶ 9} "5. As a result of this agreement, an `Easement and Right-of-Way' was executed on or about June 2, 2005, by Terry and Deborah Thomas. A copy of it is attached as Exhibit 3. That easement has never been amended or cancelled by the action of the parties and is the only bilateral written document bearing upon the rights of the parties in this controversy.
 {¶ 10} "6. In reliance on the rights referred to by the easement, Exhibit 3, Ohio Power performed the cutting and clearing of many trees which grew upon the Thomas property and overhung Meter Road at the place mentioned.
 {¶ 11} "7. After the cutting and clearing above mentioned, Brent Baker became aware that the dwelling house which he was constructing was not within the Ohio Power service area, but rather within the service area of Carroll REA. That dwelling house was constructed at the location marked `Baker House' on the attached plat, Exhibit 2. Ohio Power was advised or otherwise became aware, of the fact that the Baker residence was within the Carroll REA service area; and Ohio Power attempted to but was not successful in obtaining permission from Carroll REA to provide service in that location. *Page 3 
 {¶ 12} "8. Ohio Power's practice in the planning and location of power lines is to locate or relocate them, where possible, along existing roadways for ease of access and improved reliability of service."
 {¶ 13} On January 3, 2006, the Thomases brought suit against American Electric Power, seeking both rescission of the easement contract and damages. American Electric answered on January 30, 2006. On May 18, 2006, the trial court corrected the defendant's name to Ohio Power Company, dba American Electric Power. The parties then filed the above stipulations on May 19, 2006, and filed briefs on the issue of whether the easement contract should be rescinded. On August 26, 2006, the trial court concluded that the easement was valid and, therefore, not subject to rescission. Ohio Power moved for summary judgment on the remaining issues on October 18, 2006. The Thomases did not respond to this motion and the trial court granted Ohio Power's motion on November 17, 2006.
 {¶ 14} On appeal, the Thomases' sole assignment of error argues:
 {¶ 15} "The trial court erred in not holding invalid an easement that was granted by Appellant because of a mutual mistake of the parties, when the facts which established the relevance and mutuality of the mistake were stipulated by the parties."
 {¶ 16} The Thomases argue that the trial court erred by not rescinding the contract between themselves and Ohio Power because of a mutual mistake of fact. Ohio Power contends that the Thomases did not raise this claim in their complaint and, therefore, the trial court did not err when it did not find that there was a mutual mistake. Moreover, it contends that there was not actually a mutual mistake in this case and, therefore, no grounds for rescinding the contract. We will address Ohio Power's procedural argument before addressing the arguments concerning the merits of the mutual mistake claim.
 Pleading Mutual Mistake {¶ 17} Civ.R. 8(A) states that a party states a claim for relief if the complaint contains "(1) a short and plain statement of the claim showing that the party is entitled to relief, and (2) a demand for judgment for the relief to which the party claims to be entitled." A complaint alleges the elements of the claim with sufficient particularity if it *Page 4 
gives reasonable notice of the claim to opposing parties. In re ElectionContest of Democratic Primary Held May 4, 1999 for Clerk, YoungstownMun. Court, 87 Ohio St.3d 118, 120, 1999-Ohio-0302. In other words, Ohio is a notice pleading, rather than a fact pleading, jurisdiction. Id.
 {¶ 18} As the dissent points out, Civ.R. 9(B) requires that mistake must be pled with particularity. However, when discussing whether the complaint alleged mistake with particularity, the dissent fails to acknowledge that the contract for an easement was attached to the complaint and incorporated into the complaint in paragraph 2. A contract which is attached to the complaint and incorporated therein is considered part of the complaint. See Civ.R. 10(C); A.H. SturgillRoofing, Inc. v. Robert W. Setterlin Sons Co., 171 Ohio App.3d 241,2007-Ohio-2020, at ¶ 10. The contract clearly states that it is providing Ohio Power with "all necessary and convenient rights" to provide "electric, other energy or communications purposes." Paragraph four of the complaint alleges that it is not necessary or convenient to provide those services. The Thomases' allegations, when read with the attached contract, are sufficient to plead mutual mistake.
 {¶ 19} Furthermore, courts have held that "Civ.R. 9(B) should not be strictly applied, even where pleadings are vague, as long as the defendant has notice of the matters about which the plaintiff complains." Butler Cty. Bd. of Commrs. v. Hamilton (2001),145 Ohio App.3d 454, 471. Fundamentally, the general principle governing pleadings remains, they must give "fair notice of the nature of the action." DeVore v. Mutual of Omaha Ins. Co. (1972), 32 Ohio App.2d 36,38.
 {¶ 20} In this case, Ohio Power has never argued that it was in any way confused about the arguments that the Thomases are making or the mistake which the Thomases allege. Since Ohio Power has never claimed that it was not on notice about the nature of the mistake which the Thomases alleged in their complaint, we cannot conclude that the Thomases have waived their right to pursue this claim. We reject Ohio's Power's argument to the contrary.
 {¶ 21} The doctrine of mutual mistake is grounds for rescission of a contract if "there is a mutual mistake as to a material part of the contract and where the complainant *Page 5 
is not negligent in failing to discover the mistake." Areawide HomeBuyers, Inc. v. Manser, 7th Dist. No. 04 MA 154, 2005-Ohio-1340, at ¶ 25, citing Irwin v. Wilson (1887), 45 Ohio St. 426. Thus, in order to state a claim for mutual mistake as a basis for rescinding a contract, a complaint must allege, at a minimum, 1) the existence of a contract; 2) a material mutual mistake by the parties when entering into the contract; and, 3) no negligence in discovering the mistake on the complainant's behalf.
 {¶ 22} The complaint in this case alleges that the Thomases entered into a contract with Ohio Edison to create an easement. It then states:
 {¶ 23} "The said easement and right-of-way agreement was entered into for the purpose of providing electric power service to an adjoining property; but after the clearing of woods was performed it was determined by the defendant that it lacked regulatory or legal authority to provide that service. The clearing of the property was therefore not `necessary' or `convenient' for the provision of electric power facilities, inasmuch as such provision of electric power service was either prohibited or unauthorized by pertinent laws and regulations."
 {¶ 24} The complaint then alleges that Ohio Power's actions constituted a trespass, that its actions were reckless, and that those actions damaged the Thomases.
 {¶ 25} We conclude that the complaint alleges all the elements of a claim for rescission of a contract because of mutual mistake. The complaint alleges the existence of a contract. It states that the contract was entered into in order to provide electric power to a neighbor, but Ohio Power could not actually provide electric power to that neighbor, i.e. that the parties were mutually mistaken about Ohio Power's ability to provide electricity to the neighbor at the time the contract was entered into. Finally, the complaint states that the blame for the mistake lies with Ohio Power, rather than the Thomases, since they claim that Ohio Power later determined it could not provide electric power to the neighbor. Accordingly, Ohio Power's procedural attack on the Thomases' claim for rescission due to mutual mistake is meritless. The Thomases' complaint stated a claim for rescission of a contract because of mutual mistake.
 Mutual Mistake *Page 6 {¶ 26} In this case, the Thomases are seeking a rescission of their contract with Ohio Power. "Rescission is an equitable remedy that invalidates an agreement." Areawide Home Buyers at ¶ 24. As stated above, a court can rescind a contract due to a mutual mistake of the parties if the mistake is in regard to a material part of the contract and where the complainant is not negligent in failing to discover the mistake. Id. at ¶ 25. "A mistake is material to a contract when it is `a mistake * * * as to a basic assumption on which the contract was made [that] has a material effect on the agreed exchange of performances.' 1 Restatement of the Law 2d, Contracts (1981) 385, Mistake, Section 152(1). Thus, the intention of the parties must have been frustrated by the mutual mistake." Reilley v. Richards, 69 Ohio St.3d 352, 353, 1994-Ohio-0528.
 {¶ 27} The trial court concluded that the easement contract did not contain any conditions or limitations on what customers the easement was meant to serve. However, the intention of the parties does not have to be expressed in an agreement in order for that intention to be subject to the doctrine of mutual mistake. The Second District explained why inWyse v. Ameritech Corp., 2d Dist. No. 20080, 2004-Ohio-1015, at ¶ 26-30.
 {¶ 28} "The trial court's comments in the present case indicate that the court interpreted the `intentions of the parties' too narrowly. Specifically, the court felt that so long as Ameritech accomplished its purpose in obtaining an easement, i.e., building a CEV, any mistake was irrelevant. However, an examination of Reilley indicates that this is incorrect.
 {¶ 29} "In Reilley, the parties signed a real estate purchase contract for property that bordered a stream. The purchaser intended to use the property to build a family home. However, after closing, the purchaser discovered that part of the property was located in a flood hazard area. Because of this, the purchaser's builder said he would not build on the property because he could not warrant the property for one year, consistent with standard building practice. Id. at 353, 632 N.E.2d 507. Neither party knew before closing that the property was in a flood hazard area.
 {¶ 30} "Ultimately, the seller brought suit on the real estate contract, and the *Page 7 
purchaser counterclaimed for recission of the contract. Id. The trial court granted recission, and the court of appeals reversed. On further appeal, however, the Ohio Supreme Court found that recission was properly granted. In this regard, the court noted that:
 {¶ 31} "`the lack of knowledge that a significant portion of the lot is located in a floodway is a mistake of fact of both parties that goes to the character of the property such that it severely frustrates the appellant's ability to build a home on the property. Thus, it is a mutual mistake of fact that is material to the subject matter of the contract.' Id. at 353, 632 N.E.2d 507.
 {¶ 32} "In Reilley, the seller's intention was to sell the property, which he was successful at doing. If the Ohio Supreme Court had followed the logic of the trial court in the present case, it would have affirmed the judgment in the seller's favor, since the seller's intentions were not frustrated. However, that is not what the court did. Instead, the court considered the subject matter of the contract, and found the mistake material to the subject matter because it severely frustrated the expectations of one party to the agreement. Another way of putting this is that the parties entered into the contract for the purchase of real property knowing that one party intended to build a home on the site, even though the intention was not expressed in the agreement. When the intention could not be accomplished due to the mutual mistake, the contract was rescinded." Id.
 {¶ 33} In this case, the parties state in their stipulations that the purpose of the easement was to give Ohio Power a right-of-way so it could supply power to the Thomases' neighbor, even though that intention was not reflected in the document granting the easement. The Thomases argue that this purpose was frustrated because of the parties' mistaken belief that Ohio Power could supply electrical power to that neighbor. Ohio Power contends that this was not an impossibility either at the time it entered into the contract or in the future, so the parties could not have been mistaken about its ability to supply electrical power to that neighbor.
 {¶ 34} Ohio Power's argument is meritless. When determining whether a mutual mistake frustrates the purpose of a contract, courts do not look to see whether it is *Page 8 
possible to complete the purpose of the contract at some time in the future. Instead, they look to the parties' reasonable expectations absent the mistake. For instance, purpose of the sale inReilley was so the buyers could build a home on the property. The Ohio Supreme Court did not look to the possibility that they could build their home on that property sometime in the future (when the flood hazard issues could be resolved) in order to determine whether the purpose was frustrated. Instead, it looked at the parties' expectations, i.e. that the buyers would be able to build a home on the property in a reasonable amount of time. See also Wyse at ¶ 32 (Looking to the plaintiff's expectations when entering into the contract to determine whether purpose of the contract had been frustrated).
 {¶ 35} In this case, it is clear that the parties expected that Ohio Power would be able to provide electric power to the neighbor when the parties entered into the contract. This was a mistaken belief and that mistake frustrates the purpose of the contract. Accordingly, there is a mutual material mistake in this case.
 {¶ 36} The dissent disagrees and attempts to distinguish Wyse andReilley by saying that the mistake in those cases concerned the easement's effect on the property of one of the parties to the contract, while the mistake in this case is in regard to the easement's effect on the property of a third-party to the contract. But Wyse andReilley do not say that the doctrine of mutual mistake only applies to the parties' reasonable expectations about how the easement will affect the parties' own property. Instead, they describe the doctrine as applying when the purpose of the contract has been frustrated. The fact that the purposes of the contracts in those cases are different than the purpose of the contract in this case does not mean that the principle espoused in those cases does not apply here.
 {¶ 37} Ohio Power does not claim that the Thomases were negligent in discovering this mistake. Moreover, the equities of this situation show that Ohio Power, as the company in the business of providing electric power, was in a much better position than the Thomases to discover the mistake.
 {¶ 38} In conclusion, the trial court erred when it refused to rescind the easement *Page 9 
due to a mutual mistake of the parties. The purpose for entering the contract was to provide electric power to the Thomases' neighbor. Both parties to the contract believed that Ohio Power could provide the neighbor with electric power. However, that belief was mistaken. Furthermore, Ohio Power, rather than the Thomases, was in the best position to know this mistaken fact when the parties entered into the contract.
 {¶ 39} For the above reasons, the Thomases' sole assignment of error is meritorious. Accordingly, the judgment of the trial court is reversed and this case is remanded for a determination of damages. Donofrio, J., concurs. Vukovich, J., dissents, see dissenting opinion.